# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM D. MOORE and YVONNE MOORE,  )<br>)<br>Plaintiffs,  )<br>)<br>vs.  )<br>)<br>UNITED STATES OF AMERICA,  )<br>)<br>Defendant.  ) | Case No. 17 C 795 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

William D. Moore and Yvonne Moore have sued the United States for negligence under the Federal Tort Claims Act (FTCA). The Moores contend that the Department of Housing and Urban Development (HUD) was negligent in failing to investigate their mortgage lender for its apparent failure to comply with applicable HUD regulations before foreclosing on the Moores' home. The United States has moved to dismiss the suit. For the reasons stated below, the Court grants the government's motion, which it construes as a motion for judgment on the pleadings.

## Background

In 2002, the Moores obtained a loan for the purchase of a home. Their mortgage was insured by HUD's Federal Housing Administration (FHA) as part of the FHA's single family mortgage insurance program. Through this program, the FHA guarantees mortgage loans made by qualified lenders to borrowers who are purchasing a primary residence. *See* 12 U.S.C. §§ 1708-1709. Claims are paid out of a Mutual Mortgage

Insurance Fund created by Congress and administered by the HUD Secretary. *Id.* § 1708(a)(1). Participating lenders must comply with a number of FHA regulations, including requirements to take certain "loss mitigation actions" before initiating foreclosure. *See id.* § 1715u(a); 24 C.F.R. §§ 203.604-203.606. A Mortgagee Review Board is authorized to initiate civil money penalty actions against mortgagees or lenders who knowingly and materially fail to engage in loss mitigation or otherwise fail to service FHA-insured mortgages in accordance with the applicable regulations. 24 C.F.R. §§ 30.35(a)(10), (14).

The Moores allege that their lender repeatedly failed to comply with FHA's loss mitigation requirements before initiating foreclosure proceedings against them. In fact, in 2004, the Moores succeeded in having the first foreclosure action filed against them in the Circuit Court of Cook County dismissed due to the lender's failure to comply with FHA requirements. In 2006, the lender agreed to the dismissal of a second foreclosure action. But despite their initial success, the Moores ultimately lost their battle against foreclosure. In 2013, the Circuit Court granted the lender's motion for summary judgment in the third foreclosure proceeding against the Moores. The Illinois Appellate Court affirmed the lower court's ruling, and the Illinois Supreme Court denied the Moores' petition for leave to appeal. The United States Supreme Court denied their petition for a writ of certiorari in April 2016.

Shortly thereafter, William Moore wrote to President Barack Obama, U.S. Attorney General Loretta Lynch, and HUD Secretary Julian Castro regarding their lender's failure to comply with the relevant FHA regulations. In May 2016, HUD responded by letter, explaining that the department was closing its review of the matter

because it appeared that the Moores had exhausted their legal remedies with respect to the foreclosure order. In July 2016, the Moores filed an administrative claim with HUD, alleging that "HUD was negligent in its investigation and verification" of whether their lender complied with federal regulations, specifically 24 C.F.R. §§ 203.604-203.606. Compl., Ex. A at 2.

The Moores filed the present suit for damages under the FTCA in January 2017. Although the complaint alleges two counts—negligence and "vicarious liability, respondeat superior, ostensible agency and / or agency"—it is best understood simply as a negligence claim against the United States.[1] Compl. at 16. Specifically, the Moores allege that, with respect to the FHA's mortgage insurance program, HUD has a duty "to protect the integrity of the mortgage insurance fund, [ensure] its longevity, guard against false claims, and require participating lenders to comply with the federal regulation [sic]." *Id.* ¶ 71. They allege that HUD breached its duty by failing to investigate their mortgage file and their lender's noncompliance with FHA regulations. They also contend that HUD breached its duty by negligently hiring and retaining "incompetent, inexperienced, and / or inadequately trained" employees. *Id.* ¶¶ 77, 79.

**Discussion**

The government has filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. First, it contends that the Court lacks subject matter jurisdiction over the Moores' complaint because the government's acts and omissions at issue fall within the "discretionary function" exception to the FTCA's

---

[1] The United States "does not contest its potential liability for the actions of HUD employees acting within the scope of their employment." Def.'s Mem. in Supp. of Mot. to Dismiss at 9.

3

waiver of the United States' sovereign immunity from suit. The government also argues that the Court lacks subject matter jurisdiction for another reason: the Moores have not alleged facts that give rise to any state law cause of action under which a private person could be held liable, which is a requirement for any claim brought against the United States under the FTCA. Lastly, the government contends that the Moores' complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim on the ground that it is barred by the FTCA's two-year statute of limitations.

Subject to a number of exceptions, the Federal Tort Claims Act waives the United States' sovereign immunity and authorizes tort suits against the government where "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" causes injury to person or property "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Lipsey v. United States*, 879 F.3d 249, 253 (7th Cir. 2018). Congress has carved out a number of exceptions to the FTCA's broad waiver of sovereign immunity; one such exception—the discretionary function exception—applies to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008).

As a preliminary matter, the government is wrong to frame the FTCA's discretionary function exception as a jurisdictional limitation. The section 2680

4

exceptions to the FTCA may be treated as jurisdictional in many circuits,[2] but the Seventh Circuit has unequivocally rejected this approach. *See Parrott v. United States*, 536 F.3d 629, 634 (7th Cir. 2008) ("The statutory exceptions enumerated in § 2680(a)-(n) to the United States'[ ] waiver of sovereign immunity . . . limit the breadth of the Government's waiver of sovereign immunity, but they do not accomplish this task by withdrawing subject-matter jurisdiction from the federal courts."). Instead, the Seventh Circuit has characterized the discretionary function exception as "an affirmative defense to liability under the FTCA that the government must plead and prove." *Keller v. United States*, 771 F.3d 1021, 1023 (7th Cir. 2014).

Because the Seventh Circuit treats the discretionary function exception as an affirmative defense rather than a limit on jurisdiction, the government should have presented its discretionary function argument in a Rule 12(c) motion for judgment on the pleadings. Fed. R. Civ. P. 12(c); *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010). Nonetheless, because all the facts relevant to this issue are properly before the Court, the Court elects to treat the present motion as a motion for judgment on the pleadings. *See, e.g.*, *ADM All. Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 745-46 (7th Cir. 2017); *Rodriguez v. Napolitano*, No. 12 C 7838, 2014 WL 1276193, at *4 (N.D. Ill. Mar. 27, 2014). Rule 12(c) motions for judgment on the pleadings are reviewed under the same standard as Rule 12(b)(6) motions to dismiss for failure to state a claim; the Court will grant the motion only if, viewing the facts in the complaint in the light most favorable to the plaintiff, "it appears beyond doubt that [he] cannot prove any facts that

---

[2] *See, e.g.*, *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 858 (4th Cir. 2016), *cert. denied,* 137 S. Ct. 2307 (2017); *Kohl v. United States*, 699 F.3d 935, 940 (6th Cir. 2012); *Loughlin v. United States*, 393 F.3d 155, 162 (D.C. Cir. 2004).

would support his claim for relief." *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citation omitted). The Court need not, however, give weight to unsupported legal conclusions in the complaint. *Id.*

The government contends that this case is barred by the FTCA's discretionary function exception. Specifically, the government argues that HUD's investigations into participating lenders' compliance with the applicable mortgage insurance program regulations and its enforcement of those regulations are quintessentially discretionary functions. As previously noted, the discretionary function exception protects the United States from liability under the FTCA for "the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 808 (1984). The Supreme Court explained in *United States v. Gaubert*, 499 U.S. 315, 323 (1991), that "the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." (internal quotation marks and citations omitted). Thus, to fall within the discretionary function exception, the challenged government conduct must meet two requirements: (1) it must be discretionary in the sense that it "involve[s] an element of judgment or choice," and (2) it must "amount to a permissible exercise of policy judgment." *Reynolds*, 549 F.3d at 1112. If a federal statute, regulation, or other policy specifically mandates a course of

action for a government employee to follow in a certain situation, the first requirement is not met, and the discretionary function exception does not apply. *See id.* With respect to the second requirement, the Supreme Court has explained that "[f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 324-25. In determining whether particular government conduct can be said to constitute an exercise of policy judgment, courts look to "the nature of the actions taken and . . . whether they are susceptible to policy analysis." *Id.* at 325; *Parrott*, 536 F.3d at 638.

The government contends that HUD employees' decisions regarding whether to investigate lenders for suspected violations of its loss mitigation requirements fall squarely within the discretionary function exception. First, the government argues that such decisions involve an element of judgment or choice because neither the statute nor HUD regulations require HUD to investigate individual lenders for suspected violations of its program regulations. Instead, the regulations state that the Mortgagee Review Board "*may* initiate a civil money penalty action against any mortgagee or lender who knowingly and materially" fails to engage in loss mitigation or otherwise comply with applicable FHA regulations. 24 C.F.R. §§ 30.35(a)(10), (14) (emphasis added).

The Moores concede that the decision to impose a civil monetary penalty on a lender for noncompliance with the regulations is discretionary. They argue, however, that HUD had a nondiscretionary duty to investigate their allegations against their lender.

7

Even in contexts where a government program is geared toward regulation and enforcement in a way that the FHA's mortgage insurance program is not, courts have recognized that agency decisions to investigate compliance with and enforce regulations often involve elements of judgment or choice. For example, in *Cooper v. American Automobile Insurance Co.*, 978 F.2d 602, 612 (10th Cir. 1992), the Tenth Circuit held that the discretionary function exception barred a livestock dealer's claim that the Packers and Stockyards Administration (PSA) knew that a particular purchaser was operating in violation of PSA rules and regulations but failed to act on that knowledge. The Tenth Circuit explained that the Packers and Stockyards Act granted "very broad discretion to the PSA regarding enforcement of rules and regulations" by stating only that the PSA "may" require livestock dealers to post bonds in order to do business in the stockyards and that it "may" suspend those who violate such a requirement. *Id.* (quoting 7 U.S.C. § 204). Moreover, even though the regulations promulgated by the PSA imposed bond requirements, they did not set out procedures for the PSA to follow regarding suspected violations. *Id.* Accordingly, the Tenth Circuit concluded that "the decision of whether or not to investigate and whether or not to enforce is left to the PSA's discretionary judgment as to what types of violations justify investigation and enforcement." *Id.* Likewise, in *Galvin v. Occupational Safety & Health Administration*, 860 F.2d 181, 184-85 (5th Cir. 1988), the Fifth Circuit explained that because the Occupational Safety and Health Act authorized the Secretary of Labor to inspect places of employment, but did not impose a duty to conduct such inspections and the relevant regulations likewise did not impose a mandatory inspection duty, inspection decisions were largely left to administrative officers' discretion. Thus, an

8

FTCA claim arising from the Occupational Safety and Health Administration's failure to inspect machinery at a particular place of employment fell within the discretionary function exception. *Id.* at 185.

It does not follow from the fact that the FHA regulations in question are mandatory for lenders participating in the mortgage insurance program that HUD has a mandatory duty to investigate each instance of suspected or alleged noncompliance with the regulations. *Cf. Cassens v. St. Louis River Cruise Lines, Inc.*, 44 F.3d 508, 513 (7th Cir. 1995) ("[T]he judgmental nature of the inspection procedure, not the mandatory nature of the regulations being enforced, is what is relevant in determining the applicability of the discretionary function exception."). The Moores do not point to any statute or regulation that creates a mandatory duty to investigate lenders that are suspected of violating program regulations—nor do they allege that HUD has a policy of investigating all complaints regarding participating lenders' failure to comply with the FHA's loss mitigation requirements. *See Berkovitz v. United States*, 486 U.S. 531, 547-48 (1988) (explaining that the discretionary function exception would not bar plaintiffs' claim if, as they alleged, the Bureau of Biologics knowingly approved the release of a vaccine lot that did not comply with safety standards despite having a policy of testing all vaccine lots and preventing the distribution of any lots that fail to comply with safety standards). Instead, they argue that the duty to investigate cannot be discretionary because HUD would "never get to the 'civil monetary penalties . . . ' unless an investigation first occurs." Pls.' Resp. at 4-5.[3] Though it may be true that HUD cannot

---

[3] The Moores also contend that "[t]he False Claims Act would dictate that the duty to investigate is not discretionary; but rather mandatory." Pls.' Resp. at 6. The False Claims Act, however, does not impose any duty to investigate on HUD. *See* 31 U.S.C.

9

impose a civil penalty on a lender for failing to comply with FHA regulations without first conducting some sort of investigation into whether the lender did in fact violate the regulations, that does not mean that HUD is required to investigate each and every individual allegation of noncompliance. In the absence of any statute, regulation, or policy *requiring* HUD to investigate all allegations of noncompliance, the decision to investigate and possibly sanction an alleged or suspected violation of FHA regulations is necessarily one that involves an element of judgment or choice as to which suspected violations merit an investigation. *See Cooper*, 978 F.2d at 612; *see also In re Complaint of Ingram Barge Co.*, 194 F. Supp. 3d 766, 791 (N.D. Ill. 2016) (challenged government conduct was discretionary where plaintiffs "failed 'to identify any specific, nondiscretionary function or duty that does not involve an element of judgment or choice.'") (quoting *Freeman v. United States*, 556 F.3d 326, 338 (5th Cir. 2009)).

Having determined that the decision to investigate any particular lender for alleged or suspected violations of HUD regulations is a discretionary one that involves an element of judgment or choice, the Court next considers whether the second requirement of the discretionary function exception—that the decision is susceptible to policy analysis—is met. *See, e.g.*, *Gaubert*, 499 U.S. at 325. The government argues that a HUD employee's decision regarding whether to investigate a lender is susceptible to policy analysis because it implicates both of the operational goals that Congress articulated for the FHA's Mutual Mortgage Insurance Fund: "minimiz[ing] the default risk to the Fund and to homeowners" and "meet[ing] the housing needs of the borrowers

---

§ 3730(a) ("The *Attorney General* diligently shall investigate a violation under section 3729.") (emphasis added).

10

that the single family mortgage insurance program . . . is designed to serve." 12 U.S.C. § 1708(a)(7). The Moores do not meaningfully contest the assertion that such a decision is based on considerations of public policy. Instead, they contend that public policy considerations justify investigating lenders for noncompliance, because HUD has interests in eliminating waste, fraud, and abuse and ensuring that the FHA is not paying out mortgage insurance claims to lenders that have not complied with its regulations. As the Supreme Court explained in *Varig Airlines*, however, "[d]ecisions as to the manner of enforcing regulations . . . require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding." *Varig Airlines*, 467 U.S. at 820. Like any other government agency, HUD does not have infinite resources. It must balance its need to ensure that participating lenders are following FHA regulations with practical staffing and funding considerations, in addition to the program's stated policy goals. Accordingly, the Court concludes that HUD decisions regarding whether to investigate specific lenders for noncompliance with FHA regulations are "grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 325; *see also Cooper*, 978 F.2d at 612 ("[T]he decision of whether or not to investigate and whether or not to enforce is left to the PSA's discretionary judgment as to what types of violations justify investigation and enforcement to effectuate the policy behind the Packers and Stockyards Act.").

    Because the decision to investigate is both discretionary and susceptible to policy analysis, the Court concludes that the discretionary function exception bars the Moores' claim that HUD negligently failed to investigate their allegations regarding their

11

lender's failure to comply with FHA regulations. And because HUD's failure to investigate the Moores' allegations against their lender also provides the basis for their claim that HUD was negligent in hiring and retaining "incompetent" employees, the Court concludes that this claim, too, is barred by the discretionary function exception.[4] Finally, because it appears beyond doubt that the discretionary function exception applies to this case, and the Moores therefore cannot prove any facts that would support their claim for relief, the Court need not reach the government's alternative arguments for dismissal.

## Conclusion

For the foregoing reasons, the Court grants the government's motion to dismiss [dkt. no. 8], which has been construed as a motion for judgment on the pleadings, and directs the Clerk to enter judgment in favor of the United States.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 22, 2018

---

[4] In any case, decisions concerning the hiring, training, and retention of employees typically fall with the discretionary function exception. *See, e.g.*, *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997); ("We hold that decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review."); *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995) ("Issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception.").